May it please the court, Daniel Kowalski, the Fowler Law Firm, Austin, Texas, pro bono counsel for the petitioner. Thank you for this opportunity to be of service to the court. One of the delightful things about this case is that it's not an immigration law case. And having been practicing immigration law for over 26 years, it's nice to get away from it and do something different. This is really a civil procedure case, an appellate procedure, an administrative law case. It has little or nothing to do with the Immigration Nationality Act and everything to do with a relatively new regulation, roughly 10 years old. The context, yes, is immigration in that there was an immigration court hearing with live witnesses in Arizona followed by an administrative appeal to the Board of Immigration Appeals, the BIA, 2,000 miles away in Falls Church, Virginia. At the heart of this case is something very familiar to every federal judge, the clear error rule, which demands proper deference to the trier of fact, in this case, the immigration judge. It's a very old rule of appellate jurisprudence. As you know from the record, the petitioner has no criminal record, no immigration record. He crossed many times in the past between Puerto Penasco, a.k.a. Rocky Point, a small fishing village southwest of Phoenix, moving food and boat parts between the fishing boats in Phoenix. On the trip in question, when he tried to enter the US in his employer's truck, the Border Patrol found a quantity of marijuana in the gas tank of his employer's truck. And here's where it gets interesting. Despite the sizable quantity of marijuana found in the gas tank, no criminal charges were pressed against my client, neither by the state of Arizona nor by the federal government. Immigration, though, charged him as being inadmissible to the United States under the reason-to-believe statute, that he was a knowing trafficker. At his hearing in Florence, Arizona, a detained setting, he was pro se, not represented. The immigration judge and the ICE trial attorney examined and cross-examined him and two Border Patrol agents in some detail. The immigration judge's conclusion was that the petitioner was credible, that he was a dupe, that he was used by his employer to transport this marijuana. You know, counsel, there's one thing about this case that bothered me, and that is the contention, and I guess it's in the record, that he would have had to put gas in the tank somewhere between where he started and where he left, because the tank was filled up with marijuana. Now, that should have, I guess, put him on notice that he was carrying more than gasoline in the tank of the car. That is the factual heart of the case. The board's argument and the Border Patrol's argument is that the marijuana took up so much space in the gas tank that he would have had to refuel between Rocky Point and the border. He says he didn't. The immigration judge believed him. What's very important and critical to the analysis of this case is that there were no measurements taken by the Border Patrol of the amount of gas in the tank of the exact mileage of this vehicle. There was evidence introduced by the Border Patrol of the generic mileage of this type of vehicle, but they did not measure or introduce any evidence about the mileage of this vehicle. So where did the board go wrong? They violated the clear error rule, a relatively new regulation. They were disappointed with the outcome. They substituted their judgment. They said, very politely, but they said the petitioner is a liar, and the immigration judge was a fool to believe him, that no judge should have believed this petitioner's rendition of the facts. But I encourage you. So what are you suggesting they should have done? They should have done, they should have read in detail the transcript, the record pages 167 to 258, the immigration judge's decision pages 151 to 158, and they would have seen that the immigration judge questioned the petitioner quite carefully and these Border Patrol agents quite carefully. And remember, this is a face-to-face encounter where the immigration judge has the best ability, really the only ability, to gauge demeanor, honesty, truthfulness, the witness's demeanor. And we know from the key case governing the clear error rule, it's an older case from 1985, a Supreme Court case, Anderson versus Bessemer City, written by Justice Byron Whizzer-White from my home state of Colorado. He played football for the Buffaloes. He hates to be called Whizzer. I'm sorry, I apologize. Now, Justice White said that the clear error rule does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently. He went on to say that when it turns on demeanor and credibility, even greater deference is owed to the trier of fact, in this case, the immigration judge. Now, the board has been in existence since the 1940s. So which fact did they substitute their judgment? Where did they? Their credibility determination. They said the petitioner is a liar, that he lied when he said he didn't refuel. Credibility is a factual determination. That's correct. That's correct. And really, what they're saying is that both of them couldn't be right, both the agent and Rodriguez couldn't be right. Not exactly, Your Honor, because for them to have, for that to be true, we would have needed precise measurements of the amount of gas and the mileage of the truck. We don't have those. We have the guesstimates of the Border Patrol agents. But we don't have measurements. Nothing scientific was entered into evidence in this case. Well, it looked to me like they just believed, they took the officers, I forget which officer it was, but they took his testimony, his statements as true. Yes, as far as it went. In other words, the Border Patrol testified as to what they did, how they extracted, how they found the marijuana, how they extracted it from the tank. The judge significantly, and he explained this in his decision, that when he questioned them on purpose about the amount of gasoline, they couldn't tell him. All they could tell him was a rough guess. And based on that plus the mileage of that vehicle, or the gas mileage, we simply don't know how much gas would have been needed to drive from Rocky Point to the border and whether the driver would have had to refuel or not. In any case, the judge, dealing with this pro se respondent, respondent below, petitioner here, face-to-face gauged his credibility and his demeanor and said, I believe him. He said he didn't know there was marijuana in the tank. He said he did not refuel. I believe him. Now, when he arrived at the border, was the tank full? It's very unclear from the record how much gas was or was not in the tank because they didn't measure it. They tapped it. Well, you can tell if the tank's full or not. You don't have to measure it to see that. The gauge may or may not have been working. There was some testimony about whether the gauge was full, indicated full or not. Again, there's no testing, no scientific evidence about the accuracy of the gauge and what a needle pointing full or half full might have meant on that truck at that time. Well, it's true that there may have been more information introduced and so forth. But we have to take a case, as we do all cases, with what was introduced and what the evidence was that what could have been found. That's correct. But we know from this case that even the government recognized that they stepped over the line the first time. The BIA decision that you're reviewing is the second go around, the first time that came up here. We're talking about the second time, though. That's right. And all they did. We've sent it back to use the appropriate standard to declare error. The board has again found, with the evidence that was introduced, that it was clear error. That's what they said. But I believe that they simply mouthed the words clear. But in fact, they were doing what they had been doing from 1940 to 2002, which is de novo review. That's what they're used to. They're not used to that. Is that the way we review the BIA, is we say they mouthed the words, but they didn't, in fact, do it? That's what I'm saying, Your Honor, yes. My time is up. Thank you. It's going quite a ways, isn't it? You're saying that they did evaluate it under the clear error rule. Not at all. You're saying they didn't. Your Honor, in this court, in the Brazilian case authored by Judge Pius in 2009, the Caba case in the Tenth Circuit, the Turkson case in the Fourth Circuit, there are many cases in which the circuit courts have rebuked the BIA for doing precisely this. Thank you. May it please the Court. I am Tracy McDonald from the United States Department of Justice's Office of Immigration Litigation, and I represent the respondent, Attorney General Eric Holder. Petitioner in this case challenges the scope of review exercised by the board. However, the board properly exercised its scope of review when it concluded that the immigration judge's finding that Petitioner was unaware of the marijuana in his truck's gas tank was clearly erroneous. Let me ask you this. So when you read the IJ's decision, it seems pretty clear that he found the petitioner credible. Yes. And he listened to the testimony of the officers, and he said they're credible. Yes. And in the end, he ended up putting more weight on the petitioner's testimony, correct? Correct. And so he denied he was a removal person. This was exclusion, right? I can't remember. He was found inadmissible. Right. So the judge found him admissible. Well, yes, the immigration judge. The ALJ found him admissible, right? So then it comes up here the first time, and then there's a stipulation. After it goes to the board, the board reverses and sends it back, right? And it comes to us, but then the parties stipulate to a remand because the board apparently, they were concerned that the board may have made factual findings. Correct. Right? And they're not supposed to do that, right? No. OK, so they do it again. Now this time, they end up believing, or they take the officer's testimony as true. Yes. To do that, didn't they have to sort of conclude that all of his testimony concerning the particular facts were true when the ALJ didn't make any such findings? Actually, I believe the record shows that the immigration judge credited both the agent's testimony as well as the petitioner's testimony, if that's what you're asking. No, I'm asking about the underlying factual events that took place, like how much gas was in the tank, how far the distance was from the border. They accepted that as being true. They accepted that. But the ALJ didn't make any findings regarding those matters. And they seem to be critical here to this case. OK, well, the board considered the evidence and testimony in the record. The board did not substitute its own factual findings for those of the immigration judge. The board squarely addressed the evidence that the immigration judge based his finding on,  and said, OK, we're going to look at the evidence of the immigration judge, and gave an explanation for why it rejected the immigration judge's credibility analysis. So is credibility a factual finding? Yes, it is. It's strictly factual, right? Yes. And based on the testimony and experience of the border patrol agents, coupled with other evidence in the record, including the amount of drugs found in the gas tank, the reduced amount of space for fuel in the gas tank, considering the amount of drugs that were in the gas tank, the board found that there was no way that the petitioner could have driven the distance he claimed, and still have so much fuel in the tank without refueling. Isn't that a factual finding right there? Yes. And it's the same. But that's not the finding that the ALJ made. It's the same factual finding that the immigration judge found. Below. That's the finding that the ALJ made? That's the actual finding that you just represented to me as a finding? I can find that in the ALJ's decision? In the record that, yes, that he considered the amount of drugs that were found in the tank. And yes. Well, you're kind of between a hard rock. Because all of these appear to be factual findings. Right. And it looks like the BIA has retried the case. Well, the government would say that it did not. Well, what would you believe the board didn't exceed its scope. The board didn't substitute its own facts. It's used the facts that were in the record that the immigration judge found. It's not surprising, when you look at what happened here, that one would say he pulled up to the border. And when they inspect the tank, they find 100 pounds of marijuana in the gas tank. One might think that it's hard to believe that he didn't know it was there. And that seems to be sort of the gestalt of the whole thing. They just say, how could this ALJ possibly come to this decision? But the ALJ had this fellow in front of him and believed him. That is all true. However, the board did not substitute any facts. It used the facts of the record. As the counsel said, it's kind of interesting. That's a fair amount of marijuana. And the United States Attorney's Office, for some reason or other, decided not to pursue criminal prosecution against this guy. There must have been something about his demeanor or believability that they found. They seemed to have believed him. Maybe not believed him, but they seemed to give some credence to what he was saying. Well, it should be noted that the INA section that he was found inadmissible under doesn't require criminal. I understand. Conviction. So it is the board's position that the, or the government's position that the board did not substitute facts and merely found that based on the evidence in the record, the immigration judge drew from the fact that the inferences that the immigration judge drew from the facts were impossible to accept. The board did not find any facts itself, but only assessed the facts as found by the immigration judge. And established by the evidence entered into the record. The board gave proper deference to the immigration judge's findings of fact, but simply arrived at a different determination after analyzing those facts. Therefore, the board did not run afoul of its scope of review. The board properly found that the immigration judge's decision was clearly erroneous. And that petitioner was inadmissible as charged. Thank you. OK. All right. Thank you, counsel. We appreciate your arguments. The matter is submitted.
judges: Hug, Fletcher, Paez